J. Sean Lemoine
State Bar No. 24027443
Jonathan S. Covin
State Bar No. 24031975
Lauren K. Drawhorn
State Bar No. 24074528
Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 900
Dallas, TX 75204
Telephone:  (214) 692-6200
Facsimile:  (214) 692-6255

COUNSEL FOR STARFISH INVESTMENTS, LP

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE § § | | |
| WILLIAM GARY STAPLETON § § | § | CASE NO. 14-42478 |
| DEBTOR § § | § | CHAPTER 7 |
| STARFISH INVESTMENTS, LP § § § | | |
| Plaintiff, § § | § | ADVERSARY NO. _____ |
| v. § § | | |
| WILLIAM GARY STAPLETON § § | | |
| Defendant. § § § | | |

### COMPLAINT TO DETERMINE DISCHARGEABILITY
### OF DEBT AND OBJECTION TO DISCHARGE

Plaintiff Starfish Investments, LP, ("Plaintiff") files this Complaint to Determine Dischargeability of Debt and Object to Discharge pursuant to 11 U.S.C. §§ 523 and 727 and Federal Rules of Bankruptcy Procedure 4004 and 4007 (the "Complaint") and in support thereof respectfully alleges as follows:

### I.  JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and

1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. PARTIES

3. Plaintiff is a limited partnership organized and existing under the laws of the State of Texas with its principal place of business in Denton County, Texas.

4. Defendant Gary Stapleton ("Defendant") is the debtor in this Chapter 7 case. This case was initiated when Plaintiff filed an involuntary petition in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Court") against Defendant on November 13, 2014. The Court entered an Agreed Order for Relief under Chapter 7 of the Bankruptcy Code ("Order for Relief") on January 14, 2015. [Docket No. 10]. Defendant can be served at the address shown on his bankruptcy petition, 1161 Stacy Road, Fairview, Texas 75089, and by serving his attorney of record in this proceeding, Christopher J. Moser, Quilling Selander Lownds Winslett & Moser, P.C., 2001 Bryan Street, Suite 1800, Dallas, TX 75201.

5. The Chapter 7 Trustee in this case is Michelle H. Chow (the "Trustee"), who may be served at her address of record, PO Box 601389, Dallas, Texas 75360. The Trustee is not a party to this litigation, but will receive courtesy copies of pleadings and other relevant filed documents.

## III. INTRODUCTION

6. Defendant has left a trail of broken companies and unpaid obligations behind him. Here, Defendant fraudulently induced Plaintiff to loan funds to Summit Renewables, LLC ("Summit") and himself (as "Co-Makers" on a note). Defendant—who was the "Managing Member" of Summit at the time of the execution of the note—falsely represented to Plaintiff that the monies would be used to start up a windmill farm, and would be paid back in short order.

Not only was the windmill farm never started, Defendant has failed to produce any evidence that it ever truly existed--much less that the money loaned by Plaintiff was used in accordance with the terms of the lending documents and Defendant's representations to Plaintiff. Because of Defendant's false representations to Plaintiff to obtain the loan, Plaintiff's claim against Defendant based upon the loan is not dischargeable under 11 U.S.C. § 523(a)(2).

7. In addition, Defendant is not entitled to a discharge under 11 U.S.C. § 727. Among other things, Defendant transferred property with an intent to hinder, delay or defraud creditors within one year before the involuntary petition date in this case, and section 727(a)(2) thus prohibits Defendant from obtaining a discharge. Moreover, Defendant has failed to satisfactorily explain the loss or dissipation of assets to meet his liabilities. In addition to the substantial sums loaned by Plaintiff, an entity owned and controlled by Defendant's father (Stapleton Enterprises, Inc.) gave Defendant approximately $3.6 million before the commencement of Defendant's bankruptcy case. Defendant has not produced documents that explain how he used these funds, and he has provided no satisfactory explanation for their dissipation. Defendant is therefore not entitled to a discharge under section 727(a)(5). Moreover, because of Defendant's failure to keep any records or documents from which his financial condition might be ascertained, he is not entitled to a discharge under section 727(a)(3). Finally, because he has knowingly made false statements under oath in this case, Defendant is not entitled to a discharge under section 727(a)(4).

8. Accordingly, Plaintiff initiates this adversary proceeding to object to the dischargeability of Defendant's debt owed to Starfish and Defendant's eligibility to receive a discharge.

## IV. BACKGROUND

9. On May 5, 2015, the Plaintiff and Defendant filed an Agreed Motion to Extend Deadline for Filing Objections to Discharge Under 11 U.S.C. §§ 523 and 727 ("Motion to Extend Deadline"). [Docket No. 37]. On June 3, 2015, the Court entered its Order Granting Agreed Motion to Extend Deadline, extending the deadline for Plaintiff to file objections to discharge under §§ 523 and 727 to June 11, 2015. [Docket No. 41].

### A. The Loan Agreement

10. Prior to the Order for Relief, Defendant approached Plaintiff to obtain funding in connection with a renewable wind farm he intended to develop and operate with his company, Summit. In reliance on Defendant's representations and warranties about the use and purpose for the funds, Plaintiff agreed to loan Summit and Defendant $501,500.00. On June 29, 2009, Summit and Defendant executed a Promissory Note in favor of Plaintiff in the amount of $501,500.00 (the "Promissory Note"). Unbeknownst to Plaintiff, Summit/Defendant did not intend to use the funds for a renewable wind farm and never intended to repay Plaintiff pursuant to the Promissory Note.

11. When Summit/Defendant did not make the required payments under the Promissory Note, as agreed, the parties agreed to enter into an amended note, which rolled up the interest owed under the Promissory Note. On April 1, 2010, Plaintiff and Summit/Defendant executed an Amended and Restated Note for $545,810.60 ("Amended Note"). Yet again, Summit did not make timely payments, as agreed in the Amended Note. Instead, Summit made a payment of $4,548.52 on June 29, 2010, Defendant made a payment of $10,000 on March 28, 2011, and an entity called Discovery Capital Management made a payment of $1,000 on April 15, 2013, for a total of $15,548.52 over a three (3) year period.

12.  On April 17, 2014, Plaintiff obtained a final judgment against Defendant for non-payment of the Amended Note, for $545,810.60 (principal), $361,554.37 (interest up to January 31, 2014), with interest continuing to accrue, with the total amount due now in excess of $1,000,000.

13.  Upon information and belief, Defendant never intended to utilize the monies to develop the renewable wind farm as promised. Rather, Defendant spent Starfish's monies upon his own personal endeavors, including home remodeling and to support his lavish lifestyle and other failing businesses. When pressed for information in a deposition to prove how the money was spent, Defendant informed Plaintiff that the computer drive with information that could prove how the money was spent "failed" (conveniently of course). Despite multiple discovery requests, a deposition, and questioning at the Creditors' meeting, Defendant has never substantiated how Starfish's money was used.

14.  The terms of the Amended Note contain a specific representation and warranty that the loan was made "primarily for business and commercial purposes and not made for personal, family or household use."

> 2.  **Purpose; Loan Agreement.** Maker represents and warrants that this loan is made primarily for business and commercial purposes and not made for personal, family or household use. Maker and Payee acknowledge and agree that the current outstanding balance of the Note, including interest accrued as of March 31, 2010, is $545,810.60.

15.  This representation and warranty was false when made, as Defendant used the funds for personal purposes and did not use the funds for business or commercial purposes for Summit. This belief is underscored by Defendant's continued failure to respond to Plaintiff's requests for any information about what happened to the $500,000 that Plaintiff provided to Defendant.

### B. Concealment, Transfer, and/or Removal of Property with Intent to Hinder, Delay or Defraud Creditors[1]

16. Defendant resides at 1161 Stacy Road, Fairview, Texas, which consists of a 21 acre tract of land with a 4000 square foot primary residence, two (2) other homes, a barn, and a horse yard (the "1161 Property"). Defendant began residing on the 1161 Property in 2008 and had, at the outset, a mortgage payment of $12,500 per month. The 1161 Property was owned by 1161 Stacy Rd, Limited Partnership (the "1161 Partnership").

17. 1161 Partnership borrowed $1,480,000 from Benchmark Bank on or about October 23, 2008, which was secured by the underlying 1161 Property. The 1161 Property was posted for foreclosure on July 14, 2014. Upon information and belief, prior to July 2014, the 1161 Partnership was owned as follows:

   a. 1161 Stacy Road Development Corp. (General Partner) (1%)
      i. Defendant (shareholder)
      ii. Mark Smith (shareholder)
   b. MS Family Limited Partnership (Limited Partner) (49.5%)
      i. Mark Smith (owner/control person)
   c. 1171 Stacy Road Real Estate Corp. f/k/a Windridge Farm, Inc. (Limited Partner) (49.5%)
      i. Defendant (owner/control person)
      ii. Laura Stapleton (owner/control person)

Upon information and belief, the 1161 Property has a fair market value that is equal to or exceeds $2,000,000. The transfer of this property is discussed below.

**Transfer of Assets to Defendant's Wife on "New Year's Day."**

18. Allegedly, on New Year's Day, Laura Stapleton, Defendant's wife and an attorney licensed in the State of Texas, and Defendant entered into a barely negotiated and possibly fraudulently created "Partition Agreement" that Laura Stapleton drafted. Although

---

[1] The documents provided by Laura and Gary Stapleton in prior litigation are a complete mess. Their deposition testimony was often inconsistent and replete with "I don't know" and "I don't remember." Plaintiff has endeavored to untie this Gordian knot through the review of records from the Texas Secretary of State, the Collin County Appraisal District, and documents and information obtained from third parties.

Laura Stapleton admits that Defendant was insolvent in 2012 and Defendant admits he has not had a job for several years, neither Laura Stapleton nor Defendant identify the date on which the Partition Agreement was entered (on the agreement itself or in previous deposition testimony). Rather, the Partition Agreement has an "effective date of January 1, 2012." The Stapletons' reference to the "effective date"—but not the date the document was actually signed—appears deliberately designed to prevent creditors from knowing when these transfers actually occurred (hereinafter the "2012 Effective Date Partition Agreement")

19.    The 2012 Effective Date Partition Agreement identifies and assigns any liability with regard to the Promissory Note or Amended Note to Defendant and transfers certain community property assets between Defendant and his wife, Laura Stapleton, as set forth below:

| Assets to Defendant | Assets to Laura Stapleton |
| --- | --- |
| 1161 Stacy Road Development Corp. ("1161 Stacy Rd Dv Corp.") | Windridge Farm, Inc. |
| United Texas Petroleum, Inc. | Law Office of Laura L. Stapleton PC |
| Titus Energy, LLC | Windridge Feed, Inc. |
| Summit Renewable Resources, LLC | North Platte Energy Group, LLC |
| CTS Holdings, Inc. | Discovery Capital Management, LLC |
| 1171 Stacy Road Real Estate Corp ("1171 Stacy Rd Corp.") | |
| CTS Exploration & Development LLC | |

20.    Laura Stapleton claims to have valued these assets prior to January 1, 2012 to conclude they were a fair exchange; however, in her deposition on September 23, 2014, she could not testify to the value of any entity identified above, other than 1171 Stacy Rd Corp

(allegedly with a value of $750,000).[2] Defendant testified on September 22, 2014 that the majority of the entities he obtained through the 2012 Effective Date Partition Agreement were worthless.

21. Assuming the 2012 Effective Date Partition Agreement was actually signed on New Year's Day, the only entities that possibly had any value that Defendant received were 1171 Stacy Rd Corp. and 1161 Stacy Rd Dv Corp. Upon information and belief, as of January 1, 2012, 1161 Stacy Rd Dv Corp. owned only a 1% interest in 1161 Partnership. By contrast, Laura Stapleton obtained Windridge Farm, which obtained a 49.5% interest in 1161 Partnership as a result of the 2012 Effective Date Partition Agreement.

22. Although Defendant obtained 1171 Stacy Rd Corp. under the 2012 Effective Date Partition Agreement, to the extent that entity owned a 49.5% interest in 1161 Partnership (as identified in the chart above), the Partition Agreement stripped that asset, and gave it to Laura Stapleton. Upon information and belief, no true valuation of these entities was ever done and the design behind the 2012 Effective Date Partition Agreement was to transfer Defendant's ownership of any entity with any value to Laura Stapleton in an effort to shield those assets from Defendant's creditors.

**Transfer of the 1171 Stacy Rd Property to the Reinhards**

23. Defendant testified in his deposition that the property owned by 1171 Stacy Rd Corp. had a value of around $700,000. However, as noted above, Defendant was identified as the owner, and the title documents Plaintiff has reviewed identify him as the owner. Further, on August 15, 2013, Defendant sold the 1171 Stacy Rd Property to the Reinhards for $522,308.25,

---

[2] 1171 Stacy Road Real Estate Corp. may or may not have owned real property located at 1171 Stacy Road, Fairview, Texas ("1171 Stacy Rd Property"). Although Defendant was living at 1161 Stacy Road, the Collin County Appriaisal District listed him as the owner of 1171 Stacy Rd from June 18. 2007 to August 15, 2013, when he sold the property to Terri and Jeffrey Reinhard (the "Reinhards").

or almost $180,000 below the market value. Defendant was also clearly insolvent at the time of this transaction.

24. Upon information and belief, the 2012 Effective Date Partition Agreement was not created until after this August 15, 2013 transaction. Thus, at the time the 2012 Effective Date Partition Agreement was actually executed, 1171 Stacy Rd. Corp. (which was purportedly transferred to Defendant under the agreement) likely owned nothing at all. Accordingly, Defendant truly obtained nothing of comparable value from Laura Stapleton under the 2012 Effective Date Partition Agreement. Moreover, Laura Stapleton would have been fully aware of the fraudulent transfer of the 1171 Stacy Rd. Property at the time of its occurrence.

**Transfer of Property to Defendant's Father/Stapleton Enterprises, Inc. ("SEI")**

25. Sometime in August or September 2014, to save the 1161 Property from foreclosure, SEI, a company owned by Defendant's father, provided either Defendant or 1161 Partnership approximately $1.4 million to pay off Benchmark Bank (the holder of the mortgage relating to the Property), and to buy out Mark Smith's interest in 1161 Partnership at the same time. There is, however, no loan agreement, promissory note, or other documents to support any inference SEI's provision of funds was anything but a gift from SEI to Stapleton and/or the 1161 Partnership. Upon information and belief, as of July 17, 2014, there was an outstanding balance of $1,017, 985.00 owed on the Property to Benchmark Bank.

26. At the same time, Mark Smith (a person believed to be in control of at least 49.5% of 1161 Partnership) transferred his interest to Defendant and/or Windridge Farms, Inc. (Laura Stapleton's wholly owned company), leaving the ownership structure of 1161 Partnership as follows:

    a. 1161 Development Corp. (General Partner) (1%)
        i. Defendant (shareholder)

      b. Defendant (Limited Partner) (49.5%)
      c. Windridge Farm, Inc. (Limited Partner) (49.5%)
          i. Laura Stapleton (owner/control person)

27. On September 30, 2014, the 1161 Property (which was then free and clear of any liens) was transferred to SEI. SEI provided no additional consideration for the transfer of the 1161 Property, and Plaintiff believes that its value at the time was at least $2 million. The only asset of 1161 Partnership was the 1161 Property, and Defendant was in control of 1161 Partnership at the time of the transfer of the property to SEI. Realizing that SEI received property whose value significantly exceeded any consideration SEI paid for it, Defendant refused to allow Plaintiff's appraiser access to the 1161 Property before the involuntary petition date.

28. Defendant and his wife continue to reside on the 1161 Property—just as they did before its transfer to SEI—enjoying their lavish lifestyle while Defendant stiffs his creditors. Defendant's purpose in transferring the 1161 Property was to hinder, delay or defraud creditors, including Plaintiff—which at the time of the transfer was actively pursuing collection on its final judgment against Defendant.

29. Although the 1161 Property was technically owned by 1161 Partnership, Defendant controlled the 1161 Partnership at the time of the transfer of the property to SEI. Moreover, 1161 Partnership did not observe corporate formalities, was undercapitalized, and was essentially used to shield Defendant's assets with the intent to hinder, delay, and defraud creditors. As such, 1161 Partnership's assets should be considered assets of Defendant and the bankruptcy estate. As a result of Defendant's transfer of the 1161 Property to his father/SEI, Defendant essentially transferred his only asset of value for far less than reasonable equivalent value, and he did so to hinder, delay and defraud creditors.

**Homestead Shenanigans**

30.     The depths to which the Stapletons will go to protect against creditors is demonstrated by the "Homestead Exemptions" attached hereto as Exhibits A and B, which they filed on May 27, 2014. The Homestead Exemptions were ostensibly filed in response to Plaintiff's Abstract of Judgment, filed on April 23, 2014.

31.     On May 27, 2014, the 1161 Property, where the Stapletons resided (and had done so since 2008) was owned by the 1161 Partnership. Nonetheless, the Stapletons asserted that not only was 1171 Stacy Rd, Fairview, Texas part of their homestead, but that 1161 Stacy Rd, Fairview (i.e. the 1161 Property), Texas was also part of their homestead.

> The property described above as 1171 Stacy Road, Fairview, Texas 75069, is used and occupied by us as our place of residence, support and the place for the exercise of the calling and business of the family, and is claimed, designated, and set aside by us to be our rural homestead under the Constitution and laws of the State of Texas, to the exclusion of any other property owned, claimed, or held by us, with the exception of the 21.1 acres located at 1161 Stacy Road, Fairview, Texas 75069, which is immediately adjacent hereto, and that we claim to be included in and part of our rural homestead. The number of acres designated by this filing includes and encompasses a total of 3.692 acres, which is a 2.342 acre tract as recorded in Volume 5231, Page 3357 of the Collin County Land Records and a 1.35 acre tract as recorded in Volume 5302, Page 5053 of the Collin County Land Record, all of which is more particularly described on Exhibit "A". The current record title holder of the property designated as our rural homestead is William Gary Stapleton.

32.     The 1171 Stacy Rd reference in the Homestead Exemptions should not be confused with the 1171 Stacy Rd Property that was fraudulently transferred to the Reinhards. Rather, the reference to 1171 Stacy Rd Property in the Homestead Exemptions refers to two (2)

separate, undeveloped tracts of property that are next to the 1161 Property (the "Fraudulent 1171 Homestead Property").

33. Not only do the Stapletons not reside on the Fraudulent 1171 Homestead Property, since 2008 they have demonstrated no intent to develop or reside on such property. The assertions in the Homestead Exemptions are therefore fraudulent. Defendant has asserted on Schedule C of his bankruptcy schedules (signed by Defendant under penalty of perjury) that the Fraudulent 1171Homestead Property is exempt as his homestead. This assertion is also fraudulent.

### C. Failure to Explain Loss of Assets and Failure to Preserve Financial Information

34. In addition to the funds received from Plaintiff, Defendant received substantial funds from SEI. According to Defendant, SEI advanced over $3.6 million in funds to SEI over several years prior to the involuntary petition date. These advances from SEI were gifts to Defendant—there were no loan agreements or promissory notes to evidence any expectation of repayment, nor was there a maturity date, interest rate, or any other features of a true debt (as opposed to a gift) associated with the advances.

35. Defendant has failed to explain how he spent the funds given to him by SEI. Defendant has produced no books or records kept by him to explain the dissipation of these funds. Yet on his bankruptcy schedules, Defendant claims to have only $1,004 in his checking account, and $100 in cash on hand.

36. In addition, Defendant has failed to keep or preserve other documents from which his financial condition or business transactions might be ascertained.

### COUNT I: OBJECTION TO DISCHARGEABILITY UNDER SECTION 523(a)(2)

37. The foregoing paragraphs are hereby incorporated by reference as if fully restated herein.

38. Plaintiff objects to the dischargeability of the debt Defendant owes Plaintiff arising from his fraudulent conduct with regard to the Promissory Note and Amended Note.

39. Defendant obtained the funds under the Promissory Note and Amended Note by false pretenses, false representation, and actual fraud. Defendant represented to Plaintiff that the funds under the Promissory Note and Amended Note were for business or commercial purposes. This representation was false. Defendant knew the representation was false or made the representation recklessly without any knowledge of its truth. Defendant intended Plaintiff rely upon his representation, and Plaintiff did rely upon this representation in executing the Promissory Note and Amended Note. As a result of Defendant's conduct, Plaintiff is owed over $1,000,000.

40. Section 523(a)(2)(A) of the Bankruptcy Code provides that a debtor is not discharged from any debt for property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2).

41. Based on the foregoing, the Court should determine the debt owed by Defendant to Plaintiff is not dischargeable pursuant to 11 U.S.C. § 523(a)(2).

### COUNT II: OBJECTION TO DISCHARGE UNDER SECTION 727(a)(2)

42. The foregoing paragraphs are incorporated by reference as if fully restated herein.

43. As described above, Defendant, with the intent to hinder, delay or defraud creditors of the estate and the trustee of the estate, has concealed, transferred, removed or

destroyed, or permitted to be concealed, transferred, removed or destroyed, property of the estate within one year before the date of the filing of the Petition.

44. The Court should therefore deny Defendant a discharge pursuant to 11 U.S.C. § 727(a)(2).

### COUNT III: OBJECTION TO DISCHARGE UNDER SECTION 727(a)(4)

45. The foregoing paragraphs are incorporated by reference as if fully restated herein.

46. Defendant knowingly and fraudulently, in or in connection with the case, made a false oath or account, and/or presented or used a false claim in connection with his scheduled exemptions. Specifically, Defendant asserts a homestead exemption with regards to 1171 Stacy Road, Fairview, Texas. [Docket No. 24].[3] However, at the creditor's meeting, Defendant testified that he has never used, and does not currently use, the 1171 Stacy Road property as his residence or family dwelling place, nor has he taken any steps for such future use. In fact, Defendant has lived, and continues to live, at 1161 Stacy Road. Therefore, 1171 Stacy Road does not meet the homestead exemption requirements, and Defendant knowingly and fraudulently, made a false oath and used a false claim in connection with his scheduled exemptions.

47. Accordingly, the Court should deny Defendant a discharge pursuant to 11 U.S.C. § 727(a)(4).

### COUNT IV: OBJECTION TO DISCHARGE UNDER 727(a)(5)

48. The foregoing paragraphs are incorporated by reference as if fully restated herein.

49. Section 727(a)(5) provides that a debtor is not entitled to a discharge if "the debtor has failed to explain satisfactorily, before determination or denial of a discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

---

[3] Plaintiff intends to file an Objection to Defendant's Homestead Exemption prior to the objection deadline.

Defendant has failed to explain satisfactorily a loss of assets or deficiency of assets to meet his liabilities.  Defendant obtained significant funds from the Plaintiff through the Promissory Note and Restated Promissory Note, and he also obtained significant funds from SEI through gifts that SEI made to Defendant.  Nevertheless, Defendant now claims he has virtually no assets to show for those monies, without sufficient explanation, and has not provided any competent evidence or documents regarding how or where he spent the funds he received before the filing of the involuntary petition.

50. The Court should therefore deny Defendant a discharge pursuant to 11 U.S.C. § 727(a)(5).

### COUNT V: OBJECTION TO DISCHARGE UNDER 727(a)(3)

51. The foregoing paragraphs are incorporated by reference as if fully restated herein.

52. Section 727(a)(3) provides that a debtor is not entitled to a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case."

53.  Defendant has failed to keep or preserve recorded information, including books, documents, records and papers, from which debtor's financial condition or business transactions might be ascertained.  His failure to do so is not justified by the circumstances of the case.

54. The Court should therefore deny Defendant a discharge pursuant to 11 U.S.C. § 727(a)(3).

## V. PRAYER

Based on all the foregoing allegations, Plaintiff respectfully request this Court hold that Plaintiff's debt against Defendant is non-dischargeable under 11 U.S.C. § 523; deny the Debtor a discharge under 11 U.S.C. § 727; and grant Plaintiff such other legal or equitable relief the Court deems just and proper.

Respectfully Submitted,

 */s/ J. Sean Lemoine*
J. Sean Lemoine
State Bar No. 24027443
Jonathan S. Covin
State Bar No. 24031975
Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 100
Dallas, TX 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
Email: sean.lemoine@wickphillips.com
Email: jonathan.covin@wickphillips.com

Lauren K. Drawhorn
State Bar No. 24074528
Wick Phillips Gould & Martin, LLP
100 Throckmorton Street, Suite 500
Fort Worth, TX 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789
Email: lauren.drawhorn@wickphillips.com

**COUNSEL FOR STARFISH INVESTMENTS, LP**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 11, 2015, the foregoing instrument was served via ECF electronic delivery on all persons and parties consenting to such service.

*/s/ J. Sean Lemoine*
J. Sean Lemoine